# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

JANE DOE 7015,

*Plaintiff,*

- *against* -

ELEKTRA ENTERTAINMENT
GROUP, INC., WARNER
COMMUNICATIONS LLC, WARNER
MUSIC GROUP CORP., JAMES
EURINGER, JOSEPH J. GALUS, and
DOES 1–5, whose identities are
unknown to Plaintiff,

*Defendants.*

Index No. _____

**SUMMONS**

Date Index No. Purchased:_____

The basis of venue is CPLR § 503(a).

COUNTY OF NEW YORK

**TO THE ABOVE NAMED DEFENDANTS:**

    **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the

Complaint, a copy of which is hereby served upon you, and to serve a copy of your Answer to the

Complaint upon the undersigned attorneys listed below within twenty (20) days after the service

of this Summons, exclusive of the day of service (or within thirty (30) days after the service is

complete if this Summons is not personally delivered to you within the State of New York), and

in the case of your failure to appear or answer, judgment by default will be taken against you for

the relief demanded herein.

    Plaintiff Jane Doe designates New York County as the place of trial.  The basis of venue

is that a substantial part of the events giving rise to the claim occurred in New York County.

Additionally, Defendant Warner Communications LLC's principal place of business is located at

1 Time Warner Center, New York, NY 10019, and Defendants Elektra Entertainment Group, Inc.

and Warner Music Group Corp.'s principal places of business are located at 1633 Broadway, New

York, NY 10019.

1

Dated:  August 9, 2021                 **GREENBERG GROSS LLP**

       */s/ Alan A. Greenberg*
Alan A. Greenberg
250 Park Avenue, Seventh Floor
New York, NY 10177
Telephone: (213) 334-7000
Email: AGreenberg@GGTrialLaw.com

Deborah S. Mallgrave (*pro hac pending*)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 334-7000
Email: dmallgrave@GGTrialLaw.com

*Counsel for Plaintiff*

Defendants' Addresses:

ELEKTRA ENTERTAINMENT GROUP INC.
C T Corporation System
28 Liberty Street
New York, NY 10005

WARNER COMMUNICATIONS LLC
C T Corporation System
28 Liberty Street
New York, NY 10005

WARNER MUSIC GROUP CORP.
C T Corporation System
28 Liberty Street
New York, NY 10005

JAMES EURINGER
6505 Costello Avenue
Van Nuys, CA 91401

JOSEPH J. GALUS
134 Kingston Street
San Francisco, CA 94110

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 7015, | Index No. _____ |
| *Plaintiff,* | |
| - *against* - | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| ELEKTRA ENTERTAINMENT GROUP, INC., WARNER COMMUNICATIONS LLC, WARNER MUSIC GROUP CORP., JAMES EURINGER, JOSEPH J. GALUS, and DOES 1–5, whose identities are unknown to Plaintiff, | |
| *Defendants.* | |

Plaintiff Jane Doe 7015 ("Plaintiff"), by and through her undersigned attorneys, files this Complaint for monetary damages against Defendants Elektra Entertainment Group, Inc., Warner Communications LLC, Warner Music Group Corp. (together, "Elektra Entertainment Defendants"), James Euringer ("Euringer"), Joseph J. Galus, also known as James Galus ("Galus"), and Defendants DOES 1–5 (all together, "Defendants"), and alleges upon personal knowledge, and where stated, upon information and belief, as follows:

## NATURE OF THE ACTION

1.    This action arises from Euringer's continued sexual assault, battery, and abuse of a 15 year-old girl, which occurred for nearly three years.  In 1996, Euringer, a musician and self-proclaimed pedophile, met Plaintiff in New York and groomed and manipulated Plaintiff into believing that his sexually assaultive behavior was not criminal and that by engaging in sexual activity with him Plaintiff was actually helping to protect younger girls from sexual assaults. During that three-year period, Euringer repeatedly sexually assaulted and molested Plaintiff.

1

2.      Despite obvious signs that Euringer was engaging in predatory conduct with
Plaintiff, Elektra Entertainment Defendants and/or DOES 1–5 (together, "Elektra") chose to sign
Euringer and his band Mindless Self Indulgence, and/or distribute their music through a record
label they operated known as "Elektra Entertainment."  Elektra knew or should have known
about Euringer's sexual predation from his own promotion of himself as a pedophile, the band's
lyrics discussing pedophilia (including a song about staring at the panties of a five-year-old girl
and wanting to rape her), Euringer having underage girls pay him $1 to kiss him at concerts, and
Mindless Self Indulgence's album artwork containing references to pedophilia.  Euringer also
brought Plaintiff, then underaged, to concerts and private recording sessions where he hugged
and kissed her in front of agents and employees of Elektra.  Despite the signs of Euringer's
abusive conduct, Elektra continued their business relationship with Euringer and their investment
in him, continued to promote his music, and continued to set up and promote his shows to put
him in direct contact with other underage girls (often in private settings through the distribution
of VIP and backstage passes), instead of protecting Plaintiff.

3.      Galus, Mindless Self Indulgence's longtime manager and producer, similarly
ignored Euringer's predatory behavior and failed to protect Plaintiff.  Even though Galus knew
that Euringer was a pedophile and that Euringer was engaging in sexual activity with Plaintiff
while she was a minor, Galus continued working with Euringer, advanced Euringer's career, and
allowed Plaintiff to attend recording sessions and concerts with Euringer (even providing VIP
passes and backstage treatment).

4.      In doing so, Defendants knowingly, intentionally, willfully, deliberately, and/or
recklessly fostered a pervasive and hostile environment that utterly disregarded the rights and
safety of Plaintiff and other minors.  With their knowledge, relationship to Euringer, and control

2

over Euringer, his shows, his music, and at times his access to minors, Defendants had the opportunity and ability to stop Euringer's sexual assaults, and to protect Plaintiff and others, but did not. As a result, Plaintiff has suffered humiliation, shame, and horror that she will continue to suffer for the rest of her life.

## PARTIES, JURISDICTION, AND VENUE

5.      Plaintiff is an adult female born in 1981 and was a minor throughout the period of child sexual assault alleged herein. At all times relevant, Plaintiff resided in Essex County, within the State of New Jersey. When Plaintiff was a minor, she was serially sexually exploited and assaulted by Euringer—who was enabled by the acts and omissions of the within named defendants.

6.      The name utilized by Plaintiff in this Complaint is fictitious to protect her privacy as a victim of sexual assault and molestation that she suffered at the hands of Defendants, beginning when she was only 15 years old. An Order to Show Cause is filed concurrently herewith since all Defendants have not consented to Plaintiff's use of a pseudonym.

7.      Elektra Entertainment Group, Inc. was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware and having its principal place of business at 1633 Broadway, New York, NY 10019.

8.      Warner Communications LLC was and is a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, and having its principal place of business at 1 Time Warner Center, New York, NY 10019. Warner Communications LLC is a successor-in-interest to Warner Communications Inc., a Delaware corporation authorized to do business in New York as "Elektra Entertainment Group" at all times relevant hereto.

3

9.      Warner Music Group Corp. was and is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, and having its principal place of business at 1633 Broadway, New York, NY 10019.

10.     Euringer is an adult male, born in 1969, who at all times relevant herein resided in New York County, within the State of New York.  Euringer, also known as "Jimmy Urine" and "Little Jimmy Urine," was and is the lead vocalist, arranger, and songwriter for the New York punk rock and electronic/industrial band Mindless Self Indulgence.  Euringer also worked as a producer for Mindless Self Indulgence.  Upon information and belief, Euringer currently resides in Los Angeles County, within the State of California, and/or in Wellington, New Zealand.

11.     Galus is an adult male, born in 1964, who currently resides in San Francisco, within the State of California.  At all times relevant herein, Galus resided in New York County, within the State of New York, and worked as a producer and manager for Mindless Self Indulgence.

12.     Plaintiff is informed and believes and thereon alleges that the true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1–5, are unknown to Plaintiff, who therefore sues Defendants DOES 1–5 by such fictitious names, and will amend the Complaint to show their true names and capacities when such names have been ascertained pursuant to CPLR § 1024.  Plaintiff is informed and believes and thereon alleges that Defendants DOES 1–5 are legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

13.     New York Department of State filings and publicly available information illustrate that, at all times relevant herein, Warner Communications Inc. (now Warner Communications LLC) owned and operated a record label, known as "Elektra Records" and/or

4

"Elektra Entertainment," that produced and distributed music. Warner Communications Inc. also

conducted business in New York under the assumed name of "Elektra Entertainment Group." In

or about 2004, Warner Music Group Corp. acquired Warner Communications LLC's music

recording, publishing, and distributing assets, including Elektra Records. Thereafter, Warner

Music Group Corp. described itself as "one of the world's leading music entertainment

companies" and the owner of "Elektra Records." Publicly available information also shows that

Elektra Entertainment Group Inc. distributed and produced music. Since "Elektra

Entertainment" signed Mindless Self Indulgence, and copyrighted, produced, and/or distributed

many of Mindless Self Indulgence's recordings (as referenced herein), Plaintiff hereby joins

Elektra Entertainment Defendants and DOES 1–5 pursuant to Civil Practice Law and Rules

("CPLR") §§ 1002(b) and 1024 because she possesses reasonable doubt as to which entity

controlled and/or operated "Elektra Entertainment" and may be held liable for her damages.

14.    Elektra provided personnel, including producers, engineers, and others, for the

promotion of its artists, production and distribution of music, and management, travel,

scheduling, and exhibition of concerts. Elektra personnel held themselves out to the public as

music producers and distributors, and as concert promoters. At all times herein mentioned, the

talent scouts, engineers, and other personnel involved in the production and exhibition of

Mindless Self Indulgence's music were the agents, servants, and/or employees of Elektra.

15.    Plaintiff brings this Complaint pursuant to CPLR § 214-g, for the child assault she

suffered at the hands of Defendants. At all relevant times, Plaintiff was a minor under 18 years

of age when the sexual assaults occurred. The conduct at issue constituted sexual offenses

against a minor in violation of a section within Article 130 and/or § 263.05 of the New York

Penal Law, or a predecessor statute that prohibited such conduct at the time of the act, and

5

resulted in physical, psychological, and emotional injuries to Plaintiff.  As a civil cause of action was previously time-barred prior to August 14, 2019, the terms of the Child Victims Act, CPLR § 214-g, revives Plaintiff's claims.

16.      Whenever reference is made to any defendant entity, such reference includes that entity, its parent companies, subsidiaries, affiliates, predecessors, and successors.  In addition, whenever reference is made to any act, deed, or transaction of any entity, the allegation means that the entity engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the entity's business or affairs.

17.      Each of the Defendants aided and abetted each other Defendant.  Each Defendant knowingly gave substantial assistance to each other Defendant, who performed the wrongful conduct alleged herein.  Accordingly, each Defendant is jointly and severally liable for the damages proximately caused by each other Defendant's wrongful conduct.

18.      This Court has jurisdiction pursuant to CPLR § 302 as Defendants' actionable conduct occurred in New York.  Further, this Court has jurisdiction pursuant to CPLR § 301 as Warner Communications LLC's principal office is located at 1 Time Warner Center, New York, NY 10019, and Warner Music Group Corp. and Elektra Entertainment Group, Inc.'s principal offices are located at 1633 Broadway, New York, NY 10019.

19.      Venue is proper in New York County, pursuant to CPLR § 503, because many of the events giving rise to this action occurred in New York County.

6

# FACTUAL ALLEGATIONS

## *Euringer Identified, Groomed, and Sexually Assaulted Plaintiff*

20.     In approximately Fall 1996, Plaintiff and her friend, both minors, traveled from their homes in New Jersey to the City of New York.  While in New York, Plaintiff encountered Euringer on the street.  At the time, Euringer was approximately 27 years old and Plaintiff was only 15 years old.  Both Plaintiff and Euringer were dressed in alternative fashion, and Plaintiff complimented Euringer on his hairstyle.  Rather than merely acknowledge Plaintiff's compliment, Euringer began conversing with Plaintiff and her friend, and joined them in traveling around New York.

21.     While traveling through New York, Plaintiff, Plaintiff's friend, and Euringer encountered a filming location for the official music video for the song "Da Funk" by Daft Punk.  Plaintiff, her friend, and Euringer were recruited to appear as extras in the music video.  From that moment and that night, despite their age difference, Euringer encouraged and pursued a continuing friendship with Plaintiff.  Euringer obtained Plaintiff's phone number and began talking with her during the next several months.

22.     Plaintiff saw Euringer again on New Year's Eve, December 31, 1996, when Plaintiff was still just 15 years old.

23.     At the end of the evening, Euringer asked Plaintiff to go with him on a "date," and subsequently Euringer and Plaintiff spent more time together on multiple occasions.  During Plaintiff's third encounter with Euringer, Euringer sexually penetrated her with his penis.  Plaintiff was still just 15 years old and Euringer was 27 years old.

24.     From approximately January 1997 to June 1999, while Plaintiff was between 15 and 18 years old, Euringer continued to groom and manipulate Plaintiff into thinking that his

7

sexually assaultive behavior was not criminal and that he and Plaintiff were in fact in a relationship.  During that time, Euringer ensured that Plaintiff came to see him in New York City nearly every week, typically on weekends.  When they saw each other, Euringer would hug, kiss, and provide other displays of affection towards Plaintiff in public (including while working or going to concerts, music studios, parties, etc.) and would insist on sexually penetrating Plaintiff when they were alone at his apartment.

25.     During this time, Euringer often took pictures with Plaintiff—including while he was kissing and hugging her.  Euringer also photographed Plaintiff nude in the bathtub, and photographed Plaintiff while she was topless.

26.     As foreplay and even during sexual acts, Euringer frequently requested Plaintiff to act like a small child, and suck her thumb, drool, and pee in her pants.

27.     Euringer also wrote letters to Plaintiff.  He often told her that he missed her or described his feelings towards her.  In one letter, Euringer told Plaintiff that he loved her and wished her a "Happy 15th Birthday" (though it was actually her 16th birthday)  Through his letter, Euringer clearly demonstrated he was aware Plaintiff was a minor.

28.     Euringer often took Plaintiff to nearby concerts.  Through one of his friends, Euringer obtained a false identification card for Plaintiff, wrongfully stating that she was 21 years old.  At these concerts, Euringer encouraged Plaintiff to use the card to consume alcohol, despite her status as a minor.

29.     During this time, Euringer acted as and treated Plaintiff as though she was his girlfriend and the two were in a consensual relationship.

30.     As Plaintiff was between 15 and 18 years old at the time of Euringer's sexual assaults, Plaintiff was a minor under the laws of the State of New York.  Since Euringer's sexual

8

assaults of Plaintiff began when she was only 15 years old, Plaintiff could not legally consent to such acts. Upon information and belief, Euringer was well aware of this fact and coerced Plaintiff into believing she was in a relationship with him as leverage in order to carry out his scheme of sexual exploitations and sexual abuse of Plaintiff.

31.     Euringer attempted to silence Plaintiff against disclosing his sexual assaults. After having manipulated Plaintiff into believing she was dating him, he told Plaintiff not to act affectionately around him when others were present and to "play it cool" until they were in private.

32.     Euringer, however, was a self-proclaimed and self-promoted pedophile. Despite his instructions to Plaintiff, his "relationship" and sexual activity with Plaintiff (a minor with the inability to consent to such acts) was openly known to Euringer's band, Galus, Euringer's and Plaintiff's friends, and eventually to Elektra's agents and employees, and anyone else who spent time with Euringer and Plaintiff.

33.     To this day, Plaintiff suffers emotional distress from Euringer's assaults.

*Euringer is a Self-Identified and Self-Promoted Pedophile*

34.     At all times relevant herein, Euringer publicly and continually admitted that he was a pedophile and attracted to young girls. In or about 1996, Euringer and Mindless Self Indulgence even published an advertisement for a drummer, actively looking for someone who "d[id not] mind drumming for a band of pedophiles." A copy of this advertisement is annexed hereto, marked "**EXHIBIT A**," and hereby made a part hereof.

35.     The artwork chosen for Mindless Self Indulgence's first album, "Tight," is a close up drawing of a female child's groin. In the drawing, the child is wearing underwear featuring drawings of children's toys and stuffed animals. A copy of the official album artwork for

"Tight" is annexed hereto, marked "**EXHIBIT B**," and hereby made a part hereof.  "Tight" was first released independently by Galus and Euringer in or around 1998.

36.     Euringer also referenced pedophilia in his lyrics.  One such song, written in or about 1997, titled "Panty Shot," contains over 20 references to the sexualization of five-year-old girls.  The song describes looking between a five-year-old girl's legs, wanting her to "spread[] her legs," and wanting to "fuck and touch the children."  The song attempts to justify the innocent nature of this predatory desire because the pedophile "didn't even touch her," he just wanted to touch her.

37.     In the years since "Panty Shot" was released, Euringer did not attempt to conceal its lyrics and release.  Instead, he continually promoted the song and referenced it in later works.  In 1998, as a part of the promotion of the band's "Tight" album, Euringer re-released the song.  Then, three years after the initial release of "Panty Shot," Euringer released the song "I Hate Jimmy Page" (through Elektra), with the following lyrics: "Who like that song five year old panty shot? Yeah, yeah, dat could be a real big record, cause it's got the bump with the molestation."

38.     Further, Euringer continually referenced "Panty Shot" during his live performances.  For example, during Mindless Self Indulgence's 2005 recorded live performance, "Our Pain, Your Gain"—which was later sold as a DVD, Euringer jumped off the venue's stage and into the audience, where he began repeatedly chanting "Panty Shot" and encouraged the crowd to join him.

39.     Euringer's pedophilic tendencies are also documented in letters and communications to Plaintiff.  In one letter to Plaintiff, Euringer described a recent visit with his

10

family and wrote that he enjoyed visiting them because "pedophilia aside," the children he visited were "sweet and cool and a lot of fun."

40.     Euringer told Plaintiff that even though she was underage, she was old enough to spend time with him.  Euringer manipulated Plaintiff into believing that by being in a "relationship" with him and being subjected to his sexual assaults, she prevented him from sexually assaulting even younger girls.

41.     Knowledge and reports of Euringer's pedophilia continue to circulate to this day. Recently, pictures of Euringer's wife, Chantal, and a man wearing a masked full-body rabbit suit at a pedophile themed party surfaced publicly.  Upon information and belief, the man wearing the rabbit suit is Euringer.  That party was hosted by director James Gunn, and upon information and belief, attendees to the party were encouraged to dress like pedophiles and abuse victims, such as children.  A copy of these pictures are annexed hereto, marked "**EXHIBIT C**," and hereby made a part hereof.

42.     In 2020, the hashtags "#jimmyurineisoverparty" and "#MSIisoverparty" were frequently used on Twitter to discuss Euringer's career and misconduct, including his song "Panty Shot" and videos of him kissing underaged girls that were posted on social media.

*Galus Produced and Promoted Euringer Despite Knowing of His Pedophilic Behavior*

43.     Galus worked with Euringer to produce and arrange songs for Mindless Self Indulgence under the name "The James Sisters."   Galus also concurrently served as Mindless Self Indulgence's manager.  He also formed a record label, Uppity Cracker Records, with Euringer to aid in releasing Mindless Self Indulgence music.

44.     Galus, as Euringer's longtime producer and collaborator, sat in a position of authority with Euringer and Mindless Self Indulgence.  Upon information and belief, Galus

11

assisted Mindless Self Indulgence in providing opportunities to the band and participated in making creative decisions over the band's direction and music.

45.     Galus knew or should have known that Euringer was a pedophile and was abusing Plaintiff.  Through their interactions, Euringer discussed his pedophilia with Galus and other band members (in Galus's presence), and Galus frequently observed Euringer interacting, touching, and kissing Plaintiff while she was a minor.

46.     Further, as the band's manager and producer, Galus was involved with the production of its songs, including "Panty Shot," and assisted Euringer in approving its "Tight" album cover featuring the close up drawing of a female child's groin area and underwear.  Using his role with Mindless Self Indulgence, Galus empowered Euringer by promoting his pedophilia.

47.     Despite his knowledge of Euringer's inappropriate conduct and clear ability to prevent such conduct, Galus failed to prevent Euringer from sexually assaulting Plaintiff.

### *Elektra Signed and Promoted Euringer with Knowledge of His Pedophilic Behavior*

48.     Due to Mindless Self Indulgence's emerging popularity in underground music, there were many record labels attempting to sign them.  Several labels, including Elektra, began courting Euringer and Mindless Self Indulgence by taking them to dinner.

49.     Despite the attention that Mindless Self Indulgence was gaining from some labels, based upon information and belief, many had reservations about signing the band due to Euringer's conduct.  Upon information and belief, Roadrunner Records, a then-New York based metal record label, had attended Mindless Self Indulgence concerts since around 1998.  While Roadrunner Records originally intended to sign Mindless Self Indulgence, the owner of Roadrunner Records ultimately chose not to, claiming creative differences based on Euringer's chosen artwork for "Tight" that featured a child's underwear.

12

50.     In or about 1998, Euringer began discussing label signings with Plaintiff, eventually telling her that he believed Elektra "listened to him" more than other labels. Thereafter, Euringer began partnering and collaborating with Elektra and its employees and agents, even before any contract was signed.

51.     For example, one of Elektra's Artists and Repertoire ("A&R") managers, Josh Deutsch, assisted Mindless Self Indulgence in mixing and/or mastering "Tight" for its initial release. As such, Josh Deutsch was heavily involved in the creation of "Tight," coordinating its final mastering and spending time together in the studio with Euringer. Plaintiff was also present during this process, and Euringer was often affectionate towards Plaintiff, kissing her in front of those present, including Deutsch. In the "Special Thanks" section of the album, Euringer even included Josh Deutsch and other Elektra's agents, thanking them for their contributions to the album. Euringer also included Plaintiff's name in the "Special Thanks" section. During the mixing and mastering of the album, upon information and belief, Deutsch frequently observed Euringer interacting, touching, and kissing Plaintiff while she was a minor.

52.     In or about January 1999, Elektra officially signed Mindless Self Indulgence. Upon information and belief, Josh Deutsch (for Elektra) negotiated the contract with Galus (for Mindless Self Indulgence).

53.     Shortly thereafter, another Elektra affiliated entity, Alternative Distribution Alliance, distributed the album "Tight."

54.     With Elektra's guidance and oversight, promotional t-shirts for Mindless Self Indulgence were made using a picture of Plaintiff taken when she was a minor. The shirt read "IT TAKES A NATION OF CRACKERS TO SMELL MY CRACK!" Upon information and

13

belief, Elektra, Galus, and Euringer made this shirt available for sale at numerous Mindless Self Indulgence concerts.

55.     With Elektra, Mindless Self Indulgence also recorded a new album, "Frankenstein Girls Will Seem Strangely Sexy."  During the recording of "Frankenstein Girls Will Seem Strangely Sexy," Josh Deutsch oversaw Mindless Self Indulgence's recording process.  Plaintiff attended studio sessions with Euringer and Mindless Self Indulgence during the recording of that album and, as was typical, Euringer hugged and kissed Plaintiff in front of those present, including Deutsch and other of Elektra's agents and employees.  Upon information and belief, Elektra's agents and employees observed Euringer kissing and touching Plaintiff during these sessions while Plaintiff was a minor.

56.     As a benefit of the business relationship between Elektra and Mindless Self Indulgence, Elektra gave Euringer all-access, backstage, and V.I.P. passes to several artists' concerts.  Euringer frequently brought Plaintiff to these concerts and into otherwise restricted areas, including backstage.  Elektra knew or should have known that Euringer brought Plaintiff to these areas, since he was often allowed to bring a guest.  While backstage, Euringer often hugged and kissed Plaintiff.

57.     Upon information and belief, Elektra's agents did not question Euringer's isolation of and affectionate displays towards Plaintiff at concerts, shows, recording sessions, or any other occassions.  Upon information and belief, none of Elektra's agents inquired as to why Plaintiff, as a minor, was present in the studio during rehearsals.  Upon information and belief, none of Elektra's agents inquired as to why Euringer, when recording the song "I Hate Jimmy Page" was singing about "molestation" and a five year old's underwear.  On the contrary, upon information and belief, Elektra's agents had a financial incentive not to stop Euringer from

14

recording the album, since they would receive payment and royalties from sales of the album once recording and mixing was completed.

58.     Upon information and belief, Mindless Self Indulgence frequently played at venues that designated Euringer's performances as "all ages." These particular shows allow anyone, including minors, to attend Euringer's concerts.

59.     Euringer frequently kissed fans, including minors, at his concerts. For example, during one performance, Euringer held up a sign that read "Kisses 1 $, V.D. Free." Euringer then jumped off the stage, approached the front row of the standing room only crowd, and collected money from various concertgoers. Euringer then proceeded to kiss at least ten different individuals who had paid him, including young girls.

60.     During another Mindless Self Indulgence performance, Euringer removed his shirt and asked "15 year-old girls" to "scream like they are watching N'Sync."

61.     Euringer continued to engage in criminal behavior while on tour. On August 13, 1999, Euringer was arrested during a concert in Detroit, Michigan for indecent exposure after Euringer exposed his penis while on-stage.

62.     Upon information and belief, Elektra supervised Mindless Self Indulgence's concert performances, and/or recording sessions, and, therefore, had the control and ability to prevent Euringer from bringing Plaintiff into these areas. For example, during the recording of "Frankenstein Girls Will Seem Strangely Sexy," Elektra sent its agents into Mindless Self Indulgence's studio sessions to prevent the band from expending significant amounts of money on mastering its recordings.

63.     In or about 2002, Elektra terminated its relationship with Mindless Self Indulgence.

15

64.    Upon information and belief, Elektra did not engage in any kind of background check or screening before signing Euringer and/or facilitating his access to minor concertgoers.

65.    Upon information and belief, Elektra's contract with Mindless Self Indulgence contained a morals clause, allowing Elektra to terminate and/or discipline Euringer for his conduct.  Despite having the power to do so, Elektra failed to terminate or discipline Euringer for known and suspected pedophilic behavior.

66.    Upon information and belief, Elektra did not have any policies or procedures established to ensure that concertgoers and other minors present were warned about Euringer or protected against pre-sexual grooming, sexual molestation, and sexual assault.

67.    Elektra knew or should have known that Euringer was a risk to minors, but chose not to investigate or to consciously ignore his predatory acts.

## FIRST CAUSE OF ACTION: SEXUAL BATTERY
### (Against Defendant Euringer)

68.    Plaintiff repeats, re-alleges and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

69.    Between approximately 1997 and 1999, when Plaintiff was between 15 and 18 years old, Euringer continuously inflicted unpermitted, harmful, and offensive sexual contact upon the person of Plaintiff.  As the sexual abuse started when she was only 15 years old, Plaintiff was unable to give valid consent.

70.    Such injuries, caused by Euringer's sexual assaults, were the result of conduct that would constitute a sexual offense as defined in Article 130 of the New York Penal Law committed against a minor under the age of 18 years old.

71.    As a direct and proximate result of Euringer's criminal acts, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

16

72.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including compensatory damages, and any other relief that the Court may deem proper.

73.     Euringer's conduct was intentional, wanton, willful, and/or outrageous, entitling Plaintiff to an award of punitive damages.

### SECOND CAUSE OF ACTION: AIDING AND ABETTING SEXUAL BATTERY
**(Against Defendants Elektra Entertainment Group Inc., Warner Communications LLC, Warner Communications LLC, Warner Music Group Corp., and Galus)**

74.     Plaintiff repeats, re-alleges and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

75.     Between approximately 1997 and 1999, when Plaintiff was between 15 and 18 years old, Euringer continuously inflicted unpermitted, harmful, and offensive sexual contact upon the person of Plaintiff.  As the sexual abuse started when she was only 15 years old, Plaintiff was unable to give valid consent.

76.     Elektra and Galus knew that Euringer was sexually assaulting, abusing, and/or molesting Plaintiff, and that Euringer was a pedophile.

77.     Elektra and Galus gave substantial assistance to Euringer's sexual battery, abuse, and/or molestation of Plaintiff by (1) facilitating, permitting, and allowing Euringer to repeatedly come into contact with Plaintiff as a minor without supervision, (2) allowing and enabling Euringer to bring Plaintiff to concerts and recording sessions, (3) failing to take steps to timely remove Euringer from Elektra and Galus's concerts and recording sessions, and failing to terminate their affiliation with Euringer, (4) fostering Euringer's pedophilia by advancing his career, promoting Euringer's music and band, giving Euringer access to their concerts and recording sessions, and introducing Euringer to new audiences and allowing him to gain further exposure for his music and potentially access to additional minors, (5) actively shielding

17

Case 1:21-cv-06868-ER   Document 1-1   Filed 08/15/21   Page 21 of 32

Euringer from responsibility for his sexual assaults of Plaintiff, (6) allowing and permitting, employees and agents to assist Euringer's music career by giving him access to their concerts and recording sessions, and (7) allowing Euringer to promote criminal activity that he was engaging in through his music.

78.    As a direct result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

79.    Elektra's and Galus's conduct was intentional, wanton, willful, and/or outrageous, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION: NEGLIGENCE
### (Against Defendants Elektra Entertainment Group Inc., Warner Communications LLC, Warner Communications LLC, Warner Music Group Corp., and Galus)

80.    Plaintiff repeats, re-alleges and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

81.    Elektra and Galus's conduct, actions, and failure to act served to create an environment in which Euringer was afforded years of continuous access to Plaintiff.

82.    As the entity responsible for promoting, producing, and distributing Euringer and Mindless Self Indulgence's music, as well as facilitating, overseeing, and coordinating Euringer and Mindless Self Indulgence's concerts and appearance at events, Elektra maintained a special relationship with Euringer and had the ability to terminate, control and direct Euringer, thereby creating a special relationship with Euringer.

83.    As the band manager and thus the person responsible for oversight, management, and control of Euringer and Mindless Self Indulgence, Galus also maintained a special relationship with Euringer.

18

84. As alleged herein, Elektra and Galus had knowledge of Euringer's pedophilia and pedophilic tendencies, knew of his public acts of indecency, and knew Euringer posed a risk to minors. Furthermore, Elektra and Galus were aware of Euringer's public persona and knew or should have known of the pre-existing allegations and/or signs of his pedophilic tendencies at the time of his assaults of Plaintiff.

85. Elektra and Galus, through their control over Euringer, maintained a special relationship with Euringer and therefore had the duty to ensure he did not sexually assault minors, including Plaintiff.

86. Furthermore, Elektra and Galus had the duty to protect minors, including Plaintiff, from foreseeable harm.

87. Elektra and Galus had a duty of reasonable care to enact policies and procedures to protect minors at their concerts and events from sexual assault and molestation by Euringer.

88. Elektra and Galus breached their duties by failing to protect Plaintiff from harm, failing to enact any policies or procedures to ensure minors were protected at their concerts and events, failing to enact any policies or procedures to address sexual assault by persons in their control, such as Euringer, and by failing to supervise, control, and/or stop Euringer from committing wrongful sexual acts with minor children, and continuing to assault Plaintiff.

89. Elektra and Galus breached their duty to take reasonable protective measures to protect Plaintiff, other minors, and individuals from the risk of sexual assault, harassment and molestation by Euringer.

90. Elektra's staff and Galus failed to stop Euringer from assaulting Plaintiff, assisted Euringer in sexually assaulting and manipulating Plaintiff, and ignored obvious signs of Euringer's prior sexual abuse.

19

91. Elektra and Galus failed to supervise Euringer in his position of authority and influence as a professional musician, failed to use reasonable care in investigating Euringer, failed to provide adequate warning to Plaintiff or other minors, and failed to take reasonable measures to prevent future sexual assault against Plaintiff and/or other minors.

92. Elektra and Galus failed to timely and properly educate, train, supervise, and/or monitor their agents, servants, and/or employees with regard to the policies and procedures that must be followed when sexual abuse by an artist is suspected or observed, and instead created an environment where sexual misconduct by Euringer was tolerated.

93. As a proximate result of Elektra and Galus's conduct and multiple and continuous breaches, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

94. Such injuries—caused by Defendants—were the result of conduct that would constitute a sexual offense as defined in Article 130 of the New York Penal Law committed against a minor under the age of 18 years old.

### FOURTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

95. Plaintiff repeats, re-alleges and incorporates herein by reference all consistent paragraphs of this Complaint as if fully set forth herein.

96. As set forth throughout this Complaint, Defendants' conduct as alleged herein was outrageous and exceeded all bounds of decency, and is utterly intolerable in a civilized society.

97. Defendants intended to cause Plaintiff emotional distress and/or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that

20

Plaintiff was being sexually assaulted while attending Defendants' events and was around Euringer, beginning when she was approximately 15 years old.

98.     Defendants' conduct caused Plaintiff severe emotional distress that is ongoing.

99.     As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1.     For past, present, and future general damages in an amount to be determined at trial;

2.     For past, present, and future special damages, including but not limited to past, present and future lost earnings, economic damages, and others in an amount to be determined at trial;

3.     For interest as allowed by law;

4.     For civil penalties as provided by law;

5.     For any applicable costs of said suit;

6.     For any appropriate punitive or exemplary damages; and

7.     For such other and further relief as the Court may deem proper.

The amount of damages sought in this Complaint exceeds the jurisdictional limits of this Court.

21

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable. Pursuant to § 4 of the New York

Child Victims Act and CPLR § 4102, Plaintiff is entitled to a trial preference.


Dated:  August 9, 2021


                                */s/ Alan A. Greenberg*
                                Alan A. Greenberg
                                **GREENBERG GROSS LLP**
                                250 Park Avenue, Seventh Floor
                                New York, NY 10177
                                Telephone: (213) 334-7000
                                Email: AGreenberg@GGTrialLaw.com

                                Deborah S. Mallgrave (*pro hac pending*)
                                601 South Figueroa Street, 30th Floor
                                Los Angeles, CA 90017
                                Telephone: (213) 334-7000
                                Email: dmallgrave@GGTrialLaw.com
                                *Counsel for Plaintiff*

22

**EXHIBIT A**

23

MINDLESS SELF INDULGENCE
NEEDS A FUCKING DRUMMER.
IF YOU ARE A GIRL OR A
BOY BETWEEN THE AGES OF
18-27 AND LIKE TO HIT STUFF
YOU MAY BE ELIGIBLE TO BE
OUR YOUNG FRESH SUCKER IF
YOU CALL THIS NUMBER
(2 1 2) 2 6 0 - 5 8 2 2
YOU HAD BETTER BE YOUNG
COOL AND STYLEISH AND NOT
BE WASTING MY MOTHER FUCKING
TIME SO CALL IF YOU LIKE
SEX PISTOLS NIN OLD SCHOOL
RAP JUNGLE YOUR MOTHERS
SMELLY ASS AND YOU DONT
MIND DRUMMING FOR A BAND OF
PEDOPHILES  **********

24

**EXHIBIT B**

25



**EXHIBIT C**

27





29