**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JANE DOE 7015,

        *Plaintiff,*

     *v.*

ELEKTRA ENTERTAINMENT
GROUP, INC., WARNER
COMMUNICATIONS LLC, WARNER
MUSIC GROUP CORP., JAMES
EURINGER, JOSEPH J. GALUS, and
DOES 1–5, whose identities are
unknown to Plaintiff,

        *Defendant(s).*

Case No. 1:21-cv-06868-JPC-JEW

**PLAINTIFF'S OPPOSITION TO DEFENDANT JAMES EURINGER'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ........................................................................................5

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................................6

III.    ARGUMENT .............................................................................................9

        A.     Defendant's Motion to Dismiss is Meritless Because FRCP 12(b)(5) is
               Inapplicable Under the Present Facts..............................................................9

        B.     Service Was Timely Because the Foreign Service Exception Applies.................12

        C.     Plaintiff Made No Misrepresentations to This Court..............................................15

        D.     When Balancing the Prejudice to the Parties, This Court Should Find That
               Plaintiff's Prejudice Outweighs Defendant's Harm ............................................17

IV.     CONCLUSION..........................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................14

*Burda Media, Inc. v. Blumenberg*,
    No. 97 CIV.7167(RWS), 2004 WL 1110419 (S.D.N.Y. May 18, 2004) ...............................14

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 (2d Cir. 2005)................................................................................................14

*Dickerson v. Napolitano*,
    604 F.3d 732 (2d Cir. 2010)................................................................................................10

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)................................................................................................14

*Franzon v. Massena Mem'l Hosp.*,
    189 F.R.D. 220 (N.D.N.Y. 1999) ...............................................................................10

*Hood River Cnty. Sch. Dist. v. Student*,
    No. 3:20-CV-1690-SI, 2022 WL 1153986 (D. Or. Apr. 19, 2022) ........................................10

*Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*,
    74 F.R.D. 621 (S.D.N.Y. 1977) ...............................................................................10

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962)................................................................................................13

*Mares v. United States*,
    627 F. App'x 21 (2d Cir. 2015) ...............................................................................11

*Montalbano v. Easco Hand Tools, Inc.*,
    766 F.2d 737 (2d Cir. 1985)................................................................................13, 14, 15

*Nita v. Connecticut Dep't of Env't Prot.*,
    16 F.3d 482 (2d Cir. 1994)................................................................................13, 17, 19

*Preston v. Mendlinger*,
    83 F.R.D. 198 (S.D.N.Y. 1979) ...............................................................................13

*Rankin v. City of Niagara Falls*,
    293 F.R.D. 375 (W.D.N.Y. 2013)................................................................................15

*Russell v. Hollister Corp.*,
No. 13-CV-5273 PAC JLC, 2014 WL 2723236 (S.D.N.Y. June 17, 2014);
JLC, 2014 WL 3928948 (S.D.N.Y. Aug. 8, 2014) ...................................................................9

*In re S. Afr. Apartheid Litig.*,
643 F. Supp. 2d 423 (S.D.N.Y. 2009)......................................................................................12

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995).......................................................................................................10

*Sikhs for Just. v. Nath*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012)......................................................................................11

*Standard Com. Tobacco Co. v. Mediterranean Shipping Co., S.A.*,
No. 94 CIV. 7040 (PKL), 1995 WL 753901 (S.D.N.Y. Dec. 19, 1995) .................................13

*Thomas v. Shinseki*,
No. 09-CV-4900 ADS WDW, 2011 WL 4753525 (E.D.N.Y. Oct. 6, 2011) ...........................18

*United Merch. Wholesale, Inc. v. IFFCO, Inc.*,
51 F. Supp. 3d 249 (E.D.N.Y. 2014) .......................................................................................11

*United States v. Cirami*,
563 F.2d 26 (2d Cir. 1977).......................................................................................................10

*Yellowave Corp. v. Mana*,
No. 00 CIV 2267 SAS, 2000 WL 1508249 (S.D.N.Y. Oct. 11, 2000).....................................12

*Zapata v. City of New York*,
502 F.3d 192 (2d Cir. 2007)....................................................................................................11

## Statutes

New York's Child Victims Act.............................................................................................6, 18, 19

## Other Authorities

F.R.C.P. 4 ..................................................................................................... *passim*

F.R.C.P. 12 ...............................................................................................................................9, 12

F.R.C.P. 41 ...................................................................................................................................17

F.R.C.P. 60...................................................................................................................................10

I.    **INTRODUCTION**

Plaintiff's summons and complaint were timely served on Defendant James Euringer (hereinafter "Defendant" or "Euringer").  Neither the facts nor the law supports Defendant's argument to the contrary.  In the absence of applicable legal authority, Defendant couches a meritless argument beneath countless inapposite string citations and, unfortunately, turns to baseless and inflammatory allegations against Plaintiff and Plaintiff's counsel.  Contrary to Defendant's vague supposition that FRCP 4(m) mandates a bright-line deadline to serve a foreign defendant, the drafters of the Federal Rules of Civil Procedure and the courts have made clear that the ultimate time to serve always rests within the district court's discretion.

This Court was never "misled" into granting Plaintiff extensions of time to serve Defendant.  Plaintiff's counsel was fully transparent, and while Defendant forcefully disagrees with this Court's exercise of discretion, neither the Court nor Plaintiff is bound by Defendant's self-serving definition of reasonableness.  While Euringer has insisted that he was not in New Zealand from October 21, 2023 to November 24, 2023, photographic and videographic evidence taken by Plaintiff's investigator during efforts to serve Euringer indicate that Euringer was residing in his home well before his purported return on November 24, 2023. Indeed, Plaintiff agrees that Euringer and his family left their home for a period of time.  However, Plaintiff submits to this Court that Euringer left shortly after Plaintiff's investigator began attempting service, and returned soon thereafter.  Ultimately, Euringer's travel plans are irrelevant to the fact that this Court, validly exercising its discretion, authorized Plaintiff to serve Euringer before November 30, 2023, and Plaintiff succeeded in so doing.

While Plaintiff agrees that 797 days is a long period to effect service, the realities and complexities of each case are different and merit individualized consideration by the Court.

Importantly, this case is about a survivor of childhood sexual abuse seeking justice pursuant to New York's Child Victims Act for wrongs that have evaded reconciliation for decades.  This Court understood the procedural history of this case and validly exercised its discretion to issue an order extending time to serve Defendant.  And while Plaintiff has satisfied her burden to demonstrate that she validly accomplished service under the extended deadline, Defendant has failed to meet his burden to demonstrate that the law precludes this Court from exercising its discretion, or that Euringer has factually been prejudiced in a way that affords him his requested relief.  Consequently, this Court should deny Defendant's motion as meritless and allow Plaintiff to proceed in the prosecution of her case.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As the Court is aware, this case involves claims stemming from the years-long sexual abuse sustained by Plaintiff at the hands of Euringer when Plaintiff was a minor.  Plaintiff's injuries occurred approximately 28 years ago when Euringer, a 27-year old man, began sexually abusing Plaintiff, who was a minor.  *See* Declaration of Alan A. Greenberg in Support of Plaintiff's Opposition to Defendant James Euringer's Motion to Dismiss Plaintiff's First Amended Complaint (Greenberg Decl.) at ¶¶ 2-3.  Prior to the instant lawsuit, Plaintiff's last contact with Euringer was approximately 25 years ago, in 1999.  *Id.* at ¶ 4.  In 2021, pursuant to New York's Child Victims Act, CPLR 214-g, Plaintiff was able to revive her previously time-barred causes of action against Euringer for his sexual assault of her.  *Id.* at ¶¶ 5-6.  In 2018, Euringer moved to New Zealand.  *See* Declaration of James Euringer in Support of Defendant James Euringer's Motion to Dismiss Plaintiff's First Amended Complaint (Euringer Decl.) at ¶ 5.  Plaintiff was not in possession of Euringer's present address. Greenberg Decl. at ¶ 7.  Accordingly, in her Complaint, Plaintiff identified Euringer's residence as either being in

California or New Zealand, and requested a summons listing Euringer's last known address in Van Nuys, California. *Id.* at ¶ 8.  Days later, Defendants Elektra Entertainment Group, Inc., Warner Communications LLC, Warner Music Group Corp., (the "corporate defendants") removed Plaintiff's complaint to the Southern District of New York. *Id.* at ¶ 9.  Following removal, service was attempted on Euringer at the Van Nuys address *within* the 90-day window under FRCP 4(m).  *Id.* at ¶ 10.  Service obviously was not accomplished due to Euringer's move to a foreign country.  *Id.* at ¶ 11.

Litigation between Plaintiff and the corporate defendants ensued, with the corporate defendants moving to dismiss the complaint after removal to federal court.  *Id.* at ¶ 14.  Plaintiff filed her First Amended Complaint on March 7, 2022.  *Id.* at ¶ 12.  At that time, given the prior failure of service on Euringer in Van Nuys, Plaintiff amended her pleading to remove Van Nuys as Euringer's presumed residence.  *Id.* at ¶ 13.  The Court granted the corporate defendants' motion to dismiss.  *Id.* at ¶ 14.  Following the Court's directive in its order dismissing the corporate defendants, on April 21, 2023, Plaintiff requested a discretionary extension of time to locate and serve Euringer.  *Id.* at ¶¶ 15-16.  Although Plaintiff erroneously believed that service needed to be accomplished pursuant to the Hague Convention, that error was of no consequence. *Id.* at ¶ 16.  This Court, having a full knowledge of the factual and procedural history of the case, and knowing that Plaintiff needed time to locate Euringer's residence, exercised its discretion to grant an order to extend time to serve Euringer.  *Id.* at ¶ 17.  Following the Court's order to extend time, one of the principal attorneys for Plaintiff, who was both the primary client contact and the attorney responsible for locating and serving Euringer, Deborah Mallgrave, left counsel's law firm and withdrew from the case.  *Id.* at ¶¶ 18-19.

In light of Ms. Mallgrave's departure, counsel's firm reassigned another attorney to

continue Plaintiff's obligation to locate and serve Defendant.  *Id.* at ¶ 20.  Given the timing of the prior attorney's departure, the newly assigned attorney researched the most expeditious way to effect service within the Court's deadline.  *Id.* at ¶ 21.  In furtherance of that goal, Plaintiff's counsel discovered that New Zealand was not a signatory to the Hague Convention, and that personal service was the method most likely to be accepted.  *Id.* at ¶ 22.  Plaintiff's counsel thereafter conducted expedited research to locate an investigator in New Zealand.  *Id.* at ¶ 22. Plaintiff's counsel was able to retain a New Zealand investigator shortly before the Court's October deadline, however, service was unable to begin immediately because the investigator needed to locate Euringer's residential address, and counsel needed to obtain a signed summons. *Id.* at ¶¶ 23-24. A summons could not issue until Plaintiff's investigator located Euringer's address. *Id.* at ¶ 24.  On October 25, 2023, Plaintiff obtained Euringer's address and the following day, received a signed summons.  *Id.* at ¶ 25.  That same day, Plaintiff's counsel instructed her investigator to begin attempts to serve Euringer.  *Id.* at ¶ 26.

On October 30, 2023, on the eve of the Court's first deadline to serve, Plaintiff's investigator informed Plaintiff's counsel that four attempts had been made at Euringer's apartment, that the apartment was occupied, but that nobody was answering the door.  *Id.* at ¶ 27. With that information, Plaintiff updated this Court and requested an additional 30 days to serve Euringer.  *Id.* at ¶ 28.  This Court, again, having a full knowledge of the factual and procedural history of the case, and knowing that Plaintiff only recently hired an investigator and was now attempting to serve Euringer at his residence, exercised its discretion to grant a second order to extend time to serve Euringer.  *Id.* at ¶ 29.  Attempts to serve Euringer were made on November 1, November 3, November 7, November 8, November 9, November 10, November 13, November 14, November 15, November 17, November 20, November 24, November 25, and

November 27, 2023, when service was accomplished on Euringer. *Id.* at ¶¶ 31-34.  Throughout

that period, Plaintiff's investigator provided status updates as well as photographs and one video

that showed Euringer's apartment to be occupied for nearly the entire month of November. *Id.*

Following the successful service of Euringer within the time ordered by this Court,

Defendant has moved, pursuant to FRCP 12(b)(5), to dismiss Plaintiff's amended complaint.

## III.   ARGUMENT

### A.   Defendant's Motion to Dismiss is Meritless Because FRCP 12(b)(5) is Inapplicable Under the Present Facts

The entirety of Defendant's Motion to Dismiss is predicated on the assumption that

Plaintiff's service of Euringer was untimely.  *See generally* Motion to Dismiss.  To support this

argument, Defendant cites forty-five cases involving circumstances where a party's case was

dismissed because service on the opposing party was untimely.  *See id*.  Not one of Defendant's

forty-five citations is applicable to the present case.  As the Court is aware, in the present case

Plaintiff accomplished service before the court-ordered deadline to serve.  Greenberg Decl. at ¶

34.  Defendant cites no authority for the proposition that where a court has ordered service to be

completed by a specific deadline, and the party accomplishes service before the deadline, service

is invalid and warrants dismissal of the action.  Defendant's inability to cite responsive authority

highlights the fatal error in Defendant's motion, that being, FRCP 12(b)(5) does not apply where

service was accomplished within the court-ordered time to serve.  *See, e.g., Russell v. Hollister

Corp.*, No. 13-CV-5273 PAC JLC, 2014 WL 2723236, at *3 (S.D.N.Y. June 17, 2014), report

and recommendation adopted, No. 13 CIV. 5273 PAC JLC, 2014 WL 3928948 (S.D.N.Y.

Aug. 8, 2014) ("It is well-established that an order of service may supersede the usual deadline

for service that runs from the date the complaint is filed.").

The subject of Defendant's motion is misplaced.  Defendant's objection is not to Plaintiff's service on Euringer, but rather, on the Court's discretionary grant of an order extending time to serve Euringer.  A party's effort to seek relief from a court order is governed by FRCP 60.  *See United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977).  However, as FRCP 60 makes clear, not all court orders are subject to challenge.  Interlocutory orders are not subject to relief under Rule 60.  *See Franzon v. Massena Mem'l Hosp.*, 189 F.R.D. 220, 223 (N.D.N.Y. 1999).  The district court has "continuing plenary power over its interlocutory orders" and may entertain reconsideration of its prior orders.  *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977).  The burden for reconsideration is "strict," and relief "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

A court's order extending time is interlocutory.  *See Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-CV-1690-SI, 2022 WL 1153986, at 5 (D. Or. Apr. 19, 2022) (collecting cases).  Thus, Defendant bears the burden to prove why he is entitled to reconsideration of this Court's order extending Plaintiff's time to serve.  Defendant cannot satisfy that strict burden.  At the outset, Euringer has not, and cannot, cite any case that supports his proposition that service within a court-ordered deadline is untimely.  Moreover, Euringer has not, and cannot, point to any controlling authority that suggests the Court committed error when it exercised its discretion to authorize Plaintiff to serve Euringer following its order dismissing the corporate defendants. *See* Greenberg Decl. at ¶ 14.  Indeed, several of the cases that Euringer cited in his motion suggest the opposite:  that the serving parties in those cases should have sought an order extending time to serve.  *See, e.g.*, *Dickerson v. Napolitano*, 604 F.3d 732, 753 (2d Cir. 2010),

*Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 608 (S.D.N.Y. 2012), and *United Merch. Wholesale, Inc. v. IFFCO, Inc.*, 51 F. Supp. 3d 249, 261 (E.D.N.Y. 2014) (court ordered supplemental briefing on whether it should exercise discretion to grant extension of time to serve rather than dismiss the case).

Fundamentally, this Court has the discretion to extend the time to serve under FRCP 4(m). This authority is explicit in the language of the rule: "**Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time.**. . ." FRCP 4(m) (emphasis added). "[A] district court has wide latitude in deciding when to grant extensions absent good cause. Factors relevant to the exercise of this discretion include, *inter alia*, the relative prejudice to the parties (including whether the action would be barred by the statute of limitations and whether defendant had actual notice of the suit) and whether there is a justifiable excuse for the failure properly to serve." *Mares v. United States*, 627 F. App'x 21, 23 (2d Cir. 2015) (internal citations omitted); *see also Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).

Having presided over this case through the corporate defendants' motion to dismiss, this Court was fully apprised of the case's factual background and procedural history at the time that this Court ordered Plaintiff to file a status update on April 21, 2023 "as to the remaining Defendants, including whether they have been served with the Amended Complaint and, if not, whether she requests an extension of time to complete service." *See* ECF No. 57 at p. 22. This Court thereafter, having knowledge and consideration of the facts in this case, validly exercised its discretion to grant an order extending time to serve Defendant by October 31, 2023, *see* ECF No. 60, and to re-extend the time to serve by November 30, 2023. *See* ECF No. 69. Defendant's

motion points to no authority whatsoever that contradicts this Court's valid and appropriate discretionary exercise of authority.  Further, Defendant's motion points to no authority whatsoever that holds that where a Plaintiff has served a party within the time set by the court, dismissal is warranted.  Such a position would contravene the explicit purpose and intent of FRCP 4(m) which vests within the district court the discretionary authority to authorize extensions of time to serve.

Defendant is unable to prevail in a challenge to this Court's discretionary grant of an interlocutory order extending time.  Defendant therefore attempts to conflate the issue by raising a meritless motion to dismiss under Rule 12(b)(5) that argues an entirely different set of facts from those that occurred in this case by wholly ignoring the import of this Court's orders. Nothing about this Court's discretionary grant of an order extending time to serve was error, and consequently, nothing about Plaintiff's service of Euringer within that deadline is erroneous.  For that reason alone, this Court should deny Defendant's motion.

**B.**     <u>**Service Was Timely Because the Foreign Service Exception Applies**</u>

Defendant's motion to dismiss must fail because it is meritless and not responsive to the actual facts and procedural posture of this case.  Additionally, this Court should still dismiss Defendant's motion because the foreign service exception applies and excuses Plaintiff's failure to serve Euringer within the standard 90-day limit delineated by FRCP 4(m) for domestic parties. The time to serve a party under FRCP 4(m) explicitly "does not apply to service in a foreign country . . ." *See* FRCP 4(m).  There is no alternative deadline provided for by the Federal Rules for service in a foreign country.  *See In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009).  However, the Second Circuit has held that the foreign service exception does not afford a party "unlimited time to serve."  *See Yellowave Corp. v. Mana*, No. 00 CIV. 2267

SAS, 2000 WL 1508249, at 2 (S.D.N.Y. Oct. 11, 2000).  Thus, a court must exercise its

discretion in determining whether service was timely beyond the time afforded under FRCP

4(m).  *See id.*

In his motion, Defendant erroneously asserts that FRCP 4(m)'s 90-day deadline applies

as a strict procedural bar under the foreign service exception.  *See* Motion to Dismiss at pp 7-10.

However, Defendant's position ignores the fact that the court acts within its discretion in

determining whether service is untimely.  *See, e.g., Standard Com. Tobacco Co. v.*

*Mediterranean Shipping Co., S.A.*, No. 94 CIV. 7040 (PKL), 1995 WL 753901, at 1 (S.D.N.Y.

Dec. 19, 1995) ("where service is in a foreign country, the Court uses a flexible due diligence

standard to determine whether service of process is timely.") (internal citation omitted); *and*

*Preston v. Mendlinger,* 83 F.R.D. 198, 201 (S.D.N.Y. 1979) (delayed service of two years was

"only moderate").  The court applies a similar discretionary standard when considering dismissal

for failure to prosecute.  *See Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1962) ("Whether such an

order [dismissing a complaint for failure to prosecute] can stand on appeal depends not on power

but on whether it was within the permissible range of the court's discretion."); *see also Nita v.*

*Connecticut Dep't of Env't Prot.*, 16 F.3d 482, 485 (2d Cir. 1994).

The case of *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985)

illustrates how the Second Circuit applies its flexible standard in timeliness to serve a party.  In

*Montalbano*, the plaintiff brought a products liability suit against, *inter alia*, Easco Tool,

Inc. ("Easco").  *See id.* at 738.  Easco filed a third-party complaint to implead OH Industries

("OH"), a Japanese corporation, as the manufacturer of the allegedly defective product.  *Id.*

Rather than serve OH, Easco erroneously served a non-party and failed to correct this mistake.

*Id*. at 739.  OH subsequently raised an affirmative defense that it was never timely served.  *Id.* at

470.  The Second Circuit held that, although the foreign service exception does not identify a

deadline to serve a party, the "foreign country exception to the 120-day period for service, is

simply inapplicable here, because Easco never attempted to serve process in a foreign country

. . . "  *Id.*

      The Second Circuit held that because service was **never** accomplished on the adverse

party, "the 120-day time limit imposed by Rule 4(j) seems therefore perfectly proper. . ."  *Id.*

The *Montalbano* ruling has subsequently been followed throughout the Second Circuit to hold

that where service was never accomplished, the court may look to FRCP4(m)'s domestic service

deadline as a reasonable benchmark for timeliness.  *See, e.g. Burda Media, Inc. v. Blumenberg*,

No. 97 CIV.7167(RWS), 2004 WL 1110419, at 6 (S.D.N.Y. May 18, 2004), aff'd sub nom.

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005).  This analysis is distinguishable from

the facts of the present case where Defendant ultimately was timely served.

      What the Second Circuit has not done, as Defendant erroneously contends, is promulgate

a bright-line rule that says foreign service must begin within 90 days or is categorically deemed

untimely.  *See* Motion to Dismiss at pp 7-10.  Such a rule would be at odds with the clear intent

of the drafters, who explicitly stated that FRCP 4(m)'s deadline "does not apply to service in a

foreign country."  Modifications to the Federal Rules of Civil Procedure "can only be

accomplished by the process of amending the Federal Rules, and not by judicial interpretation."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, n. 14 (2007) (internal citations and quotation

marks omitted).  Rather than misread the Second Circuit's application of the foreign service

exception to violate the separation of powers, the court must construe its interpretation in

harmony with the language of the drafters. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511

(2018) ("Our rules aiming for harmony over conflict in statutory interpretation grow from an

appreciation that it's the job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them.").

The present case is not one where, as with *Montalbano*, service on the foreign defendant was never accomplished.  Thus, the Court needs not look mechanically at FRCP 4(m)'s 90-day deadline to determine reasonableness.  First, and completely contrary to Defendant's assertion otherwise, Plaintiff did attempt to serve Euringer in California, which is where Plaintiff believed that Euringer resided, shortly after her case was removed to the Southern District of New York. *See* Greenberg Decl.  at ¶ 10.  Moreover, given the complicated procedural history of this case as articulated, *supra*, the Court was well within its discretion to grant Plaintiff two short extensions of time to serve Euringer.  *See Id.*  Consequently, while Defendant alleges in hyperbole that Plaintiff's 797-day delay was manifest injustice, his allegations are neither grounded in fact nor supported by the law. The foreign service exception is deliberately left open to the district court's discretion precisely so that, in circumstances such as this, the court may consider the totality of the circumstances and provide a reasonable solution instead of being locked to a draconian bright-line deadline.  This Court correctly interpreted the foreign service exception in this case and issued the appropriate order.

## C.    Plaintiff Made No Misrepresentations to This Court

Defendant is out of line in suggesting that Plaintiff made false statements to the Court or that Plaintiff's conduct is sanctionable.  Further, comparing Plaintiff's counsel to the attorney in *Rankin v. City of Niagara Falls*, 293 F.R.D. 375, 382 (W.D.N.Y. 2013), is shocking.  In *Rankin*, the sanctioned attorney had previously been reprimanded for misconduct and blatantly lied to a magistrate judge in order to obtain an extension of time to file an opposition to a motion for summary judgment where: (1) the attorney never intended to file the opposition, (2) there was no

legal basis to oppose the motion, and (3) the attorney requested the extension solely to avoid further professional reprimand.  *See id.* at 379, 389-90.  The facts in the present case could not be more different.

At the outset, as to Plaintiff's first status report on April 21, 2023, Plaintiff *accurately* indicated to the Court that she "is attempting to locate [Euringer] to serve him" but that "Plaintiff has not been able to complete service of process of the First Amended Complaint . . ." Greenberg Decl.  at ¶ 16.  Despite wishful thinking from Defendant, there is nothing inaccurate about Plaintiff's report.  Had Defendant reviewed the docket in this matter, he would have seen that Ms. Mallgrave, one of Plaintiff's counsel, withdrew as counsel during that period.  *Id.* at ¶ 18. Further, Plaintiff was fully transparent with the Court about the fact that she neither knew nor began service on Euringer on April 21, 2023, and with that information the Court still granted Plaintiff an extension of time to serve Euringer.  *Id.* at ¶ 17.

As to Plaintiff's second status report on October 31, 2023, Plaintiff accurately relayed to the Court exactly what Plaintiff's investigator had said: that "[t]he investigator has identified the residence of Euringer and has attempted service four times. The investigator has informed Plaintiff that the residence is occupied, but that the occupants are refusing to acknowledge or answer the investigator." *Id.* at ¶ 28.  Presumably, Defendant takes umbrage with Plaintiff's supposition that someone who refuses to answer their door four times is apparently avoiding service.  However, nothing about Plaintiff's representation was inaccurate insofar as was relayed to Plaintiff by her investigator, or in light of the fact that Euringer was not away from his New Zealand residence for the period in which he declared himself to be.  *See id.* at ¶¶ 31-33. Regardless, the Court knew that Plaintiff had still not served Euringer at the time that the Court exercised its discretion to extend the time to serve a to November 30, 2023. *See id.* at ¶ 29.

There is absolutely nothing to support Defendant's wild accusations that Plaintiff or Plaintiff's counsel misrepresented the Court.  The fact that Defendant is upset that Plaintiff succeeded in accomplishing service within the Court-ordered deadline does not entitle Defendant to cast aspersions on opposing counsel.

> **D.** **When Balancing the Prejudice to the Parties, This Court Should Find That Plaintiff's Prejudice Outweighs Defendant's Harm**

This Court should dismiss Defendant's motion on the basis that it is not supported by law as applied to the facts of this case.  Should this Court, however, evaluate the relative prejudices of the parties under a FRCP 41(b) analysis for failure to prosecute, the factors predominantly and overwhelmingly favor Plaintiff.  In the Second Circuit, the court applies, principally, a five-factor test: "[1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and [5] whether the judge has adequately assessed the efficacy of lesser sanctions." *Nita*, 16 F.3d at 485 (internal citations and quotation marks and alterations omitted). "Generally, no one factor is dispositive." *Id.*

As to the first factor, Plaintiff agrees that 797 days is a lengthy period.  However, the delay did not occur in a vacuum - as detailed throughout this motion *supra*, Plaintiff made an attempt to serve Euringer at the outset in what Plaintiff believed to be his residence in California, and subsequently faced a procedurally complicated case during the pendency of this litigation. The remaining four factors all strongly favor Plaintiff, particularly in light of the fact that Plaintiff has already effected service within the Court's previously imposed deadline to serve.

While Plaintiff never received specific notice that further delay would result in a dismissal, the Court set an explicit deadline to serve by November 30, 2023, which Plaintiff complied with by effecting service within that deadline.  Moreover, by extending time to serve the Court protected Plaintiff's right to due process and a fair chance to be heard by affording Plaintiff the right and ability to proceed with her case.

As to the third factor, Defendant is not likely to be prejudiced by further delay for two reasons:  he has already been served and therefore cannot face further delay, and because the passage of time is unlikely to impact witnesses, memories, or evidence to any degree greater than what has already been lost in the prior twenty years.  Specifically as to the present case, Defendant has failed to identify any particular prejudice suffered by defending this case - he has merely articulated presumed prejudice from the delay.  But presumed prejudices must be evaluated within the appropriate context, given that this case was brought under New York's Child Victims Act, CPLR 214-g.  The Child Victims Act is unique in that, by temporarily reviving cases involving childhood sexual assault, the people of New York have already determined that any risk of harm to cases arising from long dormant allegations are outweighed by the right of victims to pursue justice for their wrongs.  Cases such as Plaintiff's are precisely why the people of New York passed CPLR 214-g, to vindicate a harm that went unresolved for too long.  Defendant's inability to articulate specific prejudice unique to this 797-day delay (as opposed to the twenty-year delay that inured to his benefit) underscores how the third factor does not fall in his favor.

By contrast, and coinciding with the fifth factor, Plaintiff's prejudice would be immense should this Court dismiss her case.  Lesser sanctions include allowing Plaintiff time to again serve the defendant.  *See, e.g. Thomas v. Shinseki*, No. 09-CV-4900 ADS WDW, 2011 WL

4753525, at 6 (E.D.N.Y. Oct. 6, 2011) ("this Court recognizes that less drastic alternatives are available such as an additional extension of time.").  A lesser sanction is unnecessary here because the Court already exercised its discretion to grant Plaintiff an extension of time to serve Euringer.  However, had the Court not granted an extension, dismissal would have been tantamount to a complete dismissal with prejudice of all of Plaintiff's claims because the statute of limitations under CPLR 214-g has since lapsed.  Consequently, the prejudice to Plaintiff would be immense - she would irrevocably lose her right to prosecute her claims.  Weighing the comparative prejudices of the parties, Plaintiff's harm from dismissal following timely service would be extraordinarily greater than Defendant's delay where he previously benefited from the statute of limitations having expired two decades earlier. Therefore, in considering these five factors, this Court should conclude that dismissal for failure to prosecute is not an appropriate remedy, and deny Defendant relief on this ground.  *See Nita* 16 F.3d 482.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that that the Defendant's motion should be denied in full.

Dated:  January 19, 2024

   */s/ Alan A. Greenberg*
Alan A. Greenberg
**GREENBERG GROSS LLP**
250 Park Avenue, Seventh Floor
New York, NY 10177
Telephone: (212) 402-0900
Email: AGreenberg@GGTrialLaw.com

   */s/ Eckley M. Keach III*
Eckley M. Keach III (pro hac pending)
**GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
Las Vegas, NV 89135
Telephone: (702) 777-0888
Email: EKeach@GGTrialLaw.com

*Counsel for Plaintiff Jane Doe 7015*